## LISTER THOMPSON V. THE STATE.

No. 16080. Delivered October 11, 1933.
Reported in 63 S. W. (2d) 849.

The opinion states the case.

*W. B. Thomas,* of Groveton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was convicted of the offense of murder and his punishment assessed at death, from which judgment he prosecutes this appeal.

The facts proven upon the trial of the case, as disclosed by the record, show that on Tuesday, the 30th day of August, A. D. 1932, Marion Blackerby and Owen Glass were sitting on the kitchen porch at the Blackerby home engaged in filing a saw. While thus engaged someone fired a shot from ambush, killing Mr. Blackerby. Owen Glass at the time was wearing a white Stetson hat. The hat had a hole in the brim and two holes in the crown which appeared to have been made by buckshot. The only wound that was discovered on his head was not skin deep, yet he lay unconscious on the porch for several hours. Mrs. Blackerby, the wife of the deceased, was at the house at the time of the alleged homicide. She testified upon the trial that after the shot was fired a man with a mask on came into the house, threw a gun in her face, and demanded money; that she could not tell whether it was a white man or a negro; she admitted, however, that on the day of the homicide she told some of the neighbors it was old man Hodge, a white man who lived in the community. The testimony further discloses that deceased was killed with a gun owned by Owen Glass which he said was stolen from his home on Sunday, two days prior to the day of the homicide. This gun was later found some distance from the Blackerby home loaded with No. 4 buckshot. Mr. Marion Blackerby, the deceased, owned a Winchester rifle which he kept in a scabbard in his home. The scabbard was found soon after the assassination a short distance from the home of Mr. Blackerby. The rifle was later located at the home of T. B. Finch in Trinity and he testified that he purchased the same from defendant on or about the 8th day of September, A. D. 1932. This rifle, according to the testimony of Tom Blackerby, a nephew of deceased and who was living at the home of deceased, was in the house on Monday night, the night before the assassination. He said he saw his aunt, the wife of deceased, carry it from the house to the kitchen. About the first day of November the defendant was arrested by the sheriff of Houston county and placed in jail. Thereafter on or about the 7th or 8th day of November the sheriff of Polk county, the county in which the alleged homicide was committed, in company with the county attorney of said county went to Crockett, the county seat of Houston county, to interview the defendant. The sheriff of Houston county together with the sheriff and the county attorney of Polk county and a deputy sheriff of Montgomery county took the defendant from the jail to the jury room of the courthouse for questioning. Not receiving satisfactory answers the sheriff of Houston county whipped the de-

fendant with a rubber hose approximately four or five feet in length. After the punishment had been administered they obtained a verbal confession from the defendant. The sheriff of Polk county then conveyed the defendant from Crockett to Livingston in Polk county where a few days later the defendant made a written confession to the county attorney in the presence of Burl Rowe, Earnest LaRoe, L. E. Kimball, and J. T. Ehrlich. This confession was introduced in evidence upon the trial without any objection on the part of the defendant.

The defendant has assigned 25 errors but in view of the disposition that will be made of this case it will be unnecessary to discuss all of them in numerical order. The defendant complains in his 9th assignment of error of the action of the trial court in refusing to give his requested special charge No. 1, which reads in substance as follows:

"A confession in order to be admissible against the defendant in a case must be shown by the evidence to have been freely and voluntarily made without compulsion or persuasion and in regard to the alleged confession of the defendant offered in evidence by the state in this case the jury are charged that if they believe such confession was not freely and voluntarily made, or if they believe the same was induced by threats, coercion or persuasion or by promise of immunity or any other improper influences, or if the jury have a reasonable doubt as to whether such alleged confession was freely and voluntarily made, then they should wholly disregard said confession and they should acquit the defendant, unless they believe from the other evidence in the case beyond a reasonable doubt that the defendant's guilt has been established of the offense charged in the indictment.

"I charge you further in this connection that if you find the fact to be that the alleged confession was reduced to writing on the day following the alleged oral confession or on a day soon thereafter in the presence of officers who procured the forced confession, if you find such was forced, does not make it a voluntary confession and the same influences and the same force, if any, would not have to be repeated in order to make the confession an involuntary one."

The court gave defendant's requested special charge No. 1A which embraced in substance paragraph one of the requested special charge No. 1, but no charge on that phase of the law as embraced in the second paragraph of the charge above quoted was submitted to the jury. We believe the refusal on the part of the court to give the substance of requested special charge

No. 1 was error. It was admitted by the officers that they whipped the defendant and obtained from him an oral confession and a few days later the county attorney of Polk county, who was present at the time the whipping was administered to the defendant, obtained the written confession introduced in evidence. The court in his main charge did not advise the jury as to what constitutes a voluntary confession nor when or under what circumstances it may be not voluntary. Hence the jury were given no guide by which to find whether or not they should give any consideration whatever to said confession. If the defendant at the time he made the written confession was still smarting from the sting of the lash or laboring under fear of a repetition of such treatment in case he did not restate the verbal confession theretofore made under the circumstances related by the officers, then it is not a voluntary confession and under the law was not admissible in evidence. This court held in the case of Williams v. State, 225 S. W., 177, that whenever the evidence shows without conflict that the confession was obtained from the defendant by coercion or extortion upon the part of the officers in charge of the prisoner, the court should exclude it. The court further said, "Although no unbending universal rule can be laid down by which to determine whether subsequent written confessions in a criminal case are admissible when the former confessions were obtained by improper influences, yet in each case the inquiry must be whether, considering the degree of intelligence of the prisoner and all the attendant circumstances, it is affirmatively shown that the effect of the primary improper inducement was so entirely obliterated from his mind that the subsequent confession could not have been in the slightest degree influenced by it, and if there be any doubt on this question it must be resolved in favor of the prisoner and the confession must be excluded." In the case under consideration the evidence shows without conflict that an oral confession was obtained from appellant under the lash applied by the officers in charge of him and the written confession introduced in evidence was made but a short time subsequent to the oral confession. Hence under the rule as announced by this court in the cases of Williams v. State, supra, and Hernandez v. State, 8 S. W. (2d) 947, and Johnson v. State, 88 S. W., 223, the court should have given defendant's requested special charge No. 1 or one of similar import. The second paragraph of appellant's requested special charge No. 1 while not an adequate and correct application of the law to the facts yet was sufficient to call the court's attention to the necessity of a proper instruction of

the law on that phase of the case. The court in his main charge did not give the jury any guide by which to determine whether under all the facts and circumstances under which the confession in evidence was obtained they could consider the same in connection with the other facts and circumstances in determining the guilt of the defendant. The defendant was entitled to an affirmative instruction on that phase of the case and the failure on the part of the court to give defendant's requested special charge No. 1 or one of like import was a limitation of his legal right.

The defendant did not object to the introduction of the confession in evidence and therefore the question of whether the same was admissible is not presented to this court for review. Reverting to the incident of the whipping of appellant, we cannot forbear to say it is regrettable to note that officers who are charged with the enforcement of the law should be so ready to violate it.

Appellant also complains of the county attorney's closing argument in which he used the following language: "I want to tell you that the whipping that Lister Thompson received from the sheriff of Houston county in the presence of the officers when his confession was taken was not nearly as bad as some that I have previously received." The appellant objected to this argument but the court overruled said objection and appellant reserved his exception in due form. We are of the opinion that this argument was highly prejudicial to the defendant. This pretended argument was but a statement of the fact denying that the appellant had been severely punished by the officers and was clearly an attempt to minimize the punishment and to create in the minds of the jury the impression that the confession was not a result of the punishment that was administered to the defendant. If he intended to testify as to what transpired in the courthouse in Crockett at which time he was present he should have taken the witness stand, testified under oath, and submitted himself to cross-examination by the appellant.

The other errors complained of may not arise again on another trial and we therefore pretermit any discussion of same.

For the errors above pointed out, this case is reversed and remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.