FLOYD GURGANUS v. THE STATE.

No. 19041. Delivered November 17, 1937.
Rehearing granted February 23, 1938.

The opinion states the case.

*J. D. Pickett,* of Palestine, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of theft of hogs and his punishment assessed at confinement in the State Penitentiary for a term of two years.

It was charged in the indictment that on or about the 2d day of December, 1935, appellant in Anderson County, Texas, did fraudulently take from the possession of James Farris, three hogs without the consent of the said James, etc. The testimony showed that three hogs, which were in the care and under the control and management of James Farris, were taken from the range in Anderson County, Texas, by the appellant and Thurston Avant, carried to Dallas and sold by them to the Armstrong Packing Company on the morning of the third day of December. On the afternoon of said day, appellant and Thurston Avant were arrested at Athens in Henderson County, and placed in jail. Later they were turned over to the officers of Anderson County. On the following day, appellant made a voluntary confession to the county attorney of Anderson County, in which he admitted that he and Thurston Avant rounded up the hogs, penned them at his brother's place, and after dark they loaded the hogs in a trailer, carried them to Dallas and sold them—that at the time he took the hogs he knew that they did not belong to either himself or to his brother. Appellant objected to the introduction of said confession in evidence, on the ground that he had been whipped by the officers of Henderson County and requested to make a confession which he

declined to do. This was before he was delivered to the officers of Anderson County. The court, before admitting said confession in evidence, retired the jury, and in their absence heard evidence upon the subject. Appellant admitted that at the time he made the confession to the county attorney of Anderson County, no character of violence whatever was resorted to by the officers. However, he was still suffering from the whipping administered to him on the previous day by the officers of Henderson County and feared similar punishment at the hands of the officers of Anderson County unless he made a confession. He testified further: "The officers told me that Avant had made a statement before I made one. They told me it was the same thing that one was. That did influence me in making that one— I figured I would have to make one of some kind, and I figured I would just make that one."

The court admitted said confession in evidence, but instructed the jury that if they believed from the evidence that the defendant was induced by promises, persuasion, or by threats made, or because of punishment administered to him while in the custody of the officers, caused him to make and sign the written statement introduced in evidence, or if they had a reasonable doubt thereof, then they should not consider it for any purpose. Appellant objected to said charge and requested a special charge, in accord with his objection, to the effect that in case the jury believed from the evidence that the officers at Athens whipped him with a view of extorting a confession from him prior to the time they delivered him to the officers of Anderson County, and if at the time he made the statement he was still suffering from such punishment in the slightest degree, and was laboring under fear of a repetition of such punishment, or if they had a reasonable doubt thereof, to acquit him. This was an incorrect instruction, because it directed an acquittal in case the jury believed that he was induced to make the confession by reason of fear of punishment, or if they had a reasonable doubt thereof, notwithstanding there was other testimony sufficient to show his guilt. He was not entitled to an acquittal in case the jury disregarded the confession, because he testified on cross-examination as follows:

"All of the rest of it took place like I told it in this statement, except that we did not pen the hogs."

It occurs to us that if it be conceded that the charge should have been more specific, yet under Article 666, C. C. P., it would not be such an error as would authorize us to reverse this case.

Appellant's next contention is that the court erred in giving the following instruction to the jury:

"You are instructed that if you believe from the evidence that the defendant took the hogs in question from some other person than the rightful owner thereof, but believed at the time he so took them that the possession of the person from whom he took them was lawful, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty.' "

Appellant's objection to the charge is that if he took the hogs from other parties than the rightful owner, regardless of whether the person in possession thereof was holding them for the rightful owner or not, he was entitled to an acquittal. We do not agree to the legal proposition advanced by him, nor to the correctness of the legal proposition contained in the charge. If he took the hogs from the rightful owner or from the person who was holding them for the owner, without the consent of the owner, or the person who was holding them for the owner, with intent to deprive the owner of the value thereof, and to appropriate them to his own use and benefit, he would be guilty of theft. The instruction, it occurs to us, was more favorable than prejudicial to the appellant.

His next contention is that the testimony shows that he was merely a receiver of the alleged stolen hogs and not the thief. The record fails to sustain his contention. The testimony shows that he and Thurston Avant went to the pen prepared to load, and did load, the hogs into a trailer, transported them to Dallas and sold them. There is no testimony that anyone gave, sold, or delivered the hogs to appellant and Avant. He testified that the hogs were in a pen near his brother Tom's house—that his Uncle Lloyd lived about one-fourth or one-half a mile from Tom's place; that his Uncle Lloyd offered him ten dollars to go with Avant to take the hogs to Dallas for the reason that Avant sometimes drank, and that he was afraid Avant might get drunk by himself. In concluding his testimony, he admitted that the statements in his confession were all true, except that he did not pen the hogs. He therefore admitted that he knew the hogs did not belong to his brother—that he did not know to whom they belonged. He also admitted that he and Avant took them from the pen, loaded them, carried them to Dallas and sold them. All of this appears in his confession. This at best but raised the issue of whether he was a receiver of the alleged stolen hogs, but appellant did not object to the court's charge for failing to submit said issue, nor did he request a special instruction on such theory. Hill v. State, 89 Texas Crim. Rep. 450.

By a bill of exception, appellant complains of certain testimony given by Miles Smith to the effect that the officers took from the person of Avant, one hundred and fifteen or one hundred and sixteen dollars, and a receipt from some packing house, showing the kind of animals sold, the weight, price, and the name of the seller. Appellant's objection to it was that the parties were under arrest at the time. The sheriff had a right to search them before placing them in jail, and the loot or fruits of the crime, found on their persons, were admissible in evidence, notwithstanding they were under arrest. See Rippy v. State, 86 Texas Crim. Rep. 547; Moore v. State, 87 Texas Crim. Rep. 573. .

However, if it should be conceded that the objection should have been sustained, we do not see how this testimony was harmful to him, in view of the fact that it was shown by other witnesses that they, appellant and Avant, sold the hogs to the Armstrong Packing Company for one hundred and fifteen or sixteen dollars, and that a receipt was issued to them showing the number of hogs sold, the gross weight, the price per pound, and the assumed name under which they were sold. The general rule is that when similar testimony, and of like nature as that objected to, is introduced without objection, no reversible error is shown. See Pryor v. State, 225 S. W. 374; Burgess v. State, 225 S. W. 182; Enix v. State, 112 Texas Crim. Rep. 376; Sparkman v. State, 82 S. W. (2d) 972.

Bill of exception number two is without merit and is overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

GRAVES, Judge, absent.

### ON MOTION FOR REHEARING.

KRUEGER, JUDGE.—Appellant has filed an able and well considered motion for rehearing. He insists that we erred in our original opinion in holding that the issues of receiving stolen property, accomplice, and alibi were not raised by the evidence.

Upon a more careful review of the record in the light of the motion, we are inclined to agree with him. The testimony which raises such issues comes from the lips of the appellant himself,

which is somewhat at variance with his confession. Nevertheless, the issues being raised, he was entitled to a proper intruction from the court with reference thereto. See Merriweather v. State, 115 S. W. 44; Williams v. State, 38 S. W. 989.

Appellant also insists that the court, by a proper instruction, should have submitted to the jury the issue of whether the purported confession was freely and voluntarily made. We are not entirely satisfied that such an issue was raised. However, in view of another trial, we suggest that the court, by an appropriate instruction, submit the same; not, however, in the language contained in the appellant's requested instruction with reference thereto. Thompson v. State, 63 S. W. (2d) 849; Brooks v. State, 95 S. W. (2d) 136.

It is therefore ordered that the motion be granted, the judgment of affirmance be set aside, and the cause be reversed and remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.